UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

In re:

VEBLEN WEST DAIRY LLP,
Tax ID/EIN: 26-2017857,

       Debtor.

: Case No. 10-10071
: (Chapter 11)
:
:
:
:

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

**AGSTAR'S RESPONSE TO DEBTOR'S MOTION
FOR AUTHORITY TO USE CASH COLLATERAL
AND REQUEST FOR PRELIMINARY HEARING**

AgStar Financial Services, PCA and AgStar Financial Services, FLCA ("AgStar"), by and through attorneys of record, Woods, Fuller, Shultz & Smith P.C., respond to Debtor's Motion for Authority to Use Cash Collateral and Request for Preliminary Hearing as follows:

1. Move to dismiss Debtor's Motion for failure to state a cause of action for which relief can be granted.

2. Deny each and every statement and allegation in Debtor's Motion except as specifically admitted in this response.

3. As to paragraph 1, AgStar admits that the Debtor has filed this motion and requested hearings.

00637005.1

4.	As to paragraph 2, the Court will and has entered Orders addressing Debtor's Motion for Interim and Final Use of Cash Collateral.

5.	As to paragraph 3, the Court will enter an Order or Orders establishing response times to the Debtor's Motion for Interim and Final Use of Cash Collateral.

6.	As to paragraph 4, AgStar admits the same.

7.	As to paragraph 5, AgStar admits that the Debtor is requesting the relief stated.

8.	As to paragraph 6, AgStar admits that the Debtor is requesting interim and final use of cash collateral and that AgStar is a secured lender of the Debtor holding valid and perfected first security interests in blanket business and ag collateral.

9.	As to paragraph 7, AgStar admits that the Debtor is making the requests as described, and affirmatively states that the Court should only allow the Debtor's use of cash collateral for fourteen calendar days and then, only in a amount that is absolutely necessary to prevent irreparable harm to the assets and operations of the Debtor and then only if the Debtor can provide adequate protection.

10.	As to paragraph 8, AgStar admits the same.

11.	As to paragraph 9, AgStar admits the same as generally being accurate.

12.	As to paragraph 10, AgStar admits the same but has insufficient knowledge or information to admit or deny the last sentence of paragraph 10.

13. As to paragraph 11, AgStar admits that the Debtor has an executory management contract with Prairie Ridge Management Company, LLC ("Prairie Ridge"), but has insufficient knowledge or information as to what Debtor claims its role is in managing its business that is separate and apart from that supplied by Prairie Ridge.

14. As to paragraph 12, AgStar admits the same.

15. As to paragraph 13, AgStar admits that there is an executory revolving dairy cattle agreement between Veblen East Dairy Limited Partnership (Veblen East) and the Debtor. This agreement speaks for itself.

16. As to paragraph 14, AgStar has insufficient knowledge or information at this time to admit or deny these allegations.

17. As to paragraph 15, AgStar has insufficient knowledge or information to admit or deny these allegations.

18. As to paragraph 16, AgStar admits that milk prices in 2009 were relatively low and that it affected revenue, but has insufficient knowledge or information at this time to admit or deny the specific allegations and statements made in paragraph 16.

19. As to paragraph 17, AgStar has insufficient knowledge or information to admit or deny the effect of the factors addressed on Debtor's specific operation.

20. As to paragraph 18, AgStar has insufficient knowledge or information to admit or deny the allegation, but does admit that the debtor is in a precarious financial condition.

21.     As to paragraph 19, AgStar denies the same and affirmatively states that AgStar has worked with the Debtor in an attempt to address financial and economic concerns, including entering into numerous forbearance and amended loan agreements.

22.     As to paragraph 20, AgStar has loaned substantial money to the Debtor and expects those funds to be paid consistent with the underlying agreements between the parties.  Milk assignments to creditors are commonplace in dairy financing. AgStar specifically denies that it was receiving full monthly principal and interest payments from the Debtor at the time of the filing of the Chapter 11 petition.  In fact, Debtor was in default for failure to timely make payments at the time of its filing.

23.     As to paragraph 21, AgStar does have a dairy assignment from the Debtor and these funds, when available, were applied to some of the indebtedness owed by the Debtor pre-petition.

24.     As to paragraph 22, Debtor was and is in default to AgStar and AgStar has taken legitimate legal positions to protect its interests, including filing a Motion for Appointment of a Receiver and for Injunctive Relief in a Minnesota state court. AgStar's conduct has not been wrongful or inappropriate.  Neither AgStar's or any of its agents' actions have constituted a course of action or conduct designed to impair the Debtor's relationship with its employees, suppliers, trade vendors or anyone else.  Any action taken by AgStar has been in good faith and in an effort to genuinely protect its

position and has further been consistent with its rights under the underlying loan documents and applicable law.

25. As to paragraph 23, AgStar denies the same.

26. As to paragraph 24, AgStar admits this is what the Debtor is seeking in terms of cash collateral and its sources.

27. As to paragraph 25, AgStar not only may hold an interest in the cash collateral proposed to be used, but AgStar irrefutably holds a valid and perfected first security interest in the Debtor's blanket agricultural and business personal property. In addition, AgStar holds valid and perfected prior and superior mortgages on the Debtor's underlying real estate.

28. As to paragraph 26, AgStar admits that other parties have filed financing statements relating to the Debtor's business, but affirmatively states that other than potential purchase money security interests or leases whose interests will be determined with certainty at a later date, AgStar's interest in the Debtor's personal property is prior and superior to the interest of any other person or entity.

29. As to paragraph 27, AgStar admits that this is what the Debtor is seeking, but affirmatively states that AgStar opposes the request as made.

30. As to paragraph 28, AgStar Admits that the Debtor should be allowed to use that amount of interim use of cash collateral that is absolutely necessary to prevent irreparable harm to the Debtor's business and operations during the next fourteen days.

If the Court does grant limited interim use of cash collateral, it should set a hearing date on the Debtor's final request before the interim authorization has expired.

31. As to paragraph 29, AgStar denies that Debtor has immediate need for $3.1 million worth of cash collateral or that this amount is necessary to prevent immediate and irreparable harm to the estate.

32. As to paragraph 30, AgStar admits that the Debtor has limited amount of cash on hand, and that it will generate some cash from ongoing operations going forward. As to the budget, at this point AgStar has insufficient knowledge or information whether the projected cash is accurate or adequate to fund the Debtor going forward, and puts Debtor to its strictest proof as to those allegations.

33. As to paragraph 31, the Debtor's offer of adequate protection is inadequate. Under 11 U.S.C. § 552(b), AgStar already has a security interest in post-petition milk, cattle, calves and their proceeds. The vast majority of the cases support this position. *See, e.g., Smith v. Dairymen, Inc.,* 790 F.2d 1107 (4th Cir.1986) (Virginia law); *In re Underbakke*, 60 B.R. 705 (Bankr.N.D.Iowa 1986); *In re Nielsen*, 48 B.R. 274 (D.N.D.1984); *In re Wiegmann,* 95 B.R. 90 (Bankr.S.D.Ill.1989); *In re Rankin*, 49 B.R. 565 (Bankr.W.D.Mo.1985); *In re Johnson*, 47 B.R. 204 (Bankr.D.Wis.1985); *In re Potter*, 46 B.R. 536 (Bankr.E.D.Tenn.1985); *In re Hollie*, 42 B.R. 111 (Bankr.M.D.Ga.1984); *see also In re Aspen Dairy*, 2005 WL 25471111 (Bankr.D.Neb.). As to the Debtor's payment of interest on AgStar's loans, Debtor is simply using

AgStar's secured collateral to pay AgStar while failing to maintain the value of AgStar's secured assets as of the filing date.

34. As to paragraph 32, AgStar denies the same and puts Debtor to its strictest proof.

35. As to paragraph 33, AgStar denies the same.

36. As to paragraph 34, AgStar admits there are ongoing negotiations regarding an interim period of cash collateral.

37. As to paragraph 35, AgStar admits that there may be a settlement between the parties regarding interim use of cash collateral.

38. As to paragraph 36, AgStar admits that the Debtor is seeking interim cash collateral use and that the Court has set a hearing date on the expedited request.

39. As to paragraph 37, AgStar admits that some interim use ( days) of cash collateral to the extent necessary to pay just those expenses absolutely necessary to maintain the Debtor's business and prevent irreparable harm is appropriate.

40. Admit there are Local Rules that apply to a Motion for Use of Cash Collateral on an interim and final basis and that the Debtor has made an attempt to request such relief.

## AFFIRMATIVE RESPONSES

41. As of April 1, 2010, the Debtor owed AgStar the following amounts on the following loans:

| Loan No. | Principal | Interest | Late Charge | Total | Daily Interest Per Diem | Daily Late Charge Per Diem |
|---|---|---|---|---|---|---|
| 1092742900 | $505,825.30 | $11,280.17 | $1,675.44 | $518,780.91 | $45.361 | $28.100 |
| 1136694700 | $4,149,092.96 | $66,517.80 | $11,391.00 | $4,227,001.76 | $372.081 | $230.500 |
| 1136735700 | $89,502.13 | $1,364.79 | $292.00 | $91,158.92 | $6.958 | $6.040 |
| 1223532100 | $1,083,792.00 | $93,384.81 | $4,408.84 | $1,181,585.65 | $494.843 | $107.260 |
| 7700371700* | $12,000,000.00 | $189,097.51 | $33,267.48 | $12,222,364.99 | $1,062.154 | $680.640 |
| Veblen West Loan Total** Due 4/1/10 | $17,828,212.39 | $361,645.08 | $51,034.76 | $18,240,892.23 | | |

* Loan No. 7700371700 is owed to AgStar FLCA only.   All other loans described above are owed exclusively to AgStar PCA.

**In addition to the foregoing, Veblen West also is indebted to AgStar for related services in the amount of $26,221.35, as of April 1, 2010, plus subsequent accruing related services.

42. Veblen West executed separate Security Agreements in favor of AgStar PCA and AgStar FLCA on September 2, 2008.  The Security Agreements pledged the following described collateral:   See Exhibit A attached hereto and incorporated herein by reference.

43. AgStar perfected its security interests by timely filing UCC-1 financing statements with the South Dakota Secretary of State.

44. In determining adequate protection for the interests of AgStar, the Court should follow the holding in *In re Martin*, 761 F.2d 472, 476-477 (8th Cir. 1985):  (1) establish the value of AgStar's interest as a secured creditor; (2) identify the risk to AgStar's value resulting from the Debtor's request for use of cash collateral; and (3)

determine whether Debtor's adequate protection proposal protects the value as nearly as possible against the risks to the value.

45.     AgStar has not consented to the Debtor's use of cash collateral and Debtor is hereby not currently authorized to use any cash collateral that is subject to AgStar's lien.

46.     The Debtor has the burden on the issue of adequate protection. See 11 U.S.C. § 363(p).

47.     The Debtor has the obligation to provide adequate protection to AgStar prior to using any of its cash collateral consistent with 11 U.S.C. § 363(e) that provides in relevant part:

> Notwithstanding any other provision to this section, at any time, on request of an entity that has in interest in property used, sold, or leased, or proposed to be used, sold, or leased, the trustee, or the Court, with or without hearing, will prohibit or condition such use, sale or lease as necessary to provide protection of such interest....

48.     The Debtor should be required, consistent with 11 U.S.C. § 363(c)(4) to segregate and account for any cash collateral in its possession, custody, or control. This includes establishing a debtor-in-possession (DIP) account where all of AgStar's cash proceeds are deposited and only disbursing funds from this account upon AgStar's consent or Court Order.

49.     The budget attached to the Debtor's motion is compounded and confusing. It is difficult to tell the timing, sources of income and categories of expenses with any

clarity. The Debtor should be required to provide submissions that are clearer and more discernible.

50. The Debtor does not have a reasonable likelihood of being able to reorganize.

51. It is unlikely that the Debtor would or could prevail at a final hearing on the use of cash collateral and therefore, cash collateral usage should be denied.

WHEREFORE, AgStar prays:

1. That the Court deny the Debtor's Motions (both final and interim) unless and until the Debtor provides adequate protection of AgStar's interest;

2. That if the Court grants use of cash collateral that it do so only in an amount absolutely necessary to prevent irreparable harm to the estate on an interim basis (fourteen calendar days), and then without the presumption that the Debtor is likely to prevail at a final hearing to be scheduled before the expiration of the interim period;

3. That if the Court grants interim use of cash collateral, that it schedule a final hearing before the expiration of the interim authorization;

4. That the Court hold the Debtor to its burden on the issue of adequate protection;

5. That the Court find that AgStar holds a valid and perfected first security interest in all of the Debtor's personal property, including equipment owned and farm

products, save and except for legitimate purchase money security interests and leasehold interests in equipment yet to be determined;

      6.      That the Court hold that AgStar already has a continuing post-petition security interest in milk, milk products, cows and calves and that providing post-petition liens in these kinds of collateral does not constitute adequate protection;

      7.      That the Court require the Debtor to segregate and account for AgStar's cash collateral; and

      8.      For such further relief as the Court deems just and equitable in the premises.

Dated this 13th day of April, 2010.

                        WOODS, FULLER, SHULTZ & SMITH P.C.

                        By /s/ ROGER W. DAMGAARD
                              Roger W. Damgaard (#340)
                              300 South Phillips Avenue, Suite 300
                              Post Office Box 5027
                              Sioux Falls, South Dakota 57117-5027
                              Attorneys for AgStar Financial Services, PCA
                              and AgStar Financial Services, FLCA
                              Telephone (605) 336-3890
                              Fax No. (605) 339-3357
                              E-mail: Roger.Damgaard@woodsfuller.com