UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| In re: ) | Bankr. No. 10-10071 |
| ) | Chapter 11 |
| VEBLEN WEST DAIRY LLP ) | |
| Tax ID/EIN 26-2017857 ) | INTERIM DECISION RE: MOTION |
| ) | TO USE CASH COLLATERAL |
| Debtor. ) | |

The matter before the Court is Debtor's Motion for Authority to Use Cash Collateral. This is a core proceeding under 28 U.S.C. § 157(b)(2). This decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c). As set forth below, the Court concludes AgStar Financial Services, PCA and AgStar Financial Services, FLCA's security interests extend to Debtor's post-petition milk and milk proceeds.

I.

Pursuant to the Court's Order Approving Stipulation for Use of Cash Collateral and Adequate Protection Through September 7, 2010 (doc. 246) and the parties' Stipulation for Use of Cash Collateral and Adequate Protection on a Final Basis (doc. 240), Debtor has been authorized to use AgStar Financial Services, PCA and AgStar Financial Services, FLCA's (collectively, "AgStar") cash collateral on the terms and conditions outlined in the parties' stipulation.[1] However, pursuant to paragraph 16 of the parties' stipulation,

AgStar's claim, as outlined in its initial Objections to Use of Cash

---

[1] The parties previously stipulated to Debtor's use of AgStar's cash collateral on an interim basis (docs. 46, 133, 151, and 236). The Court approved each of those stipulations (docs. 50, 134, 154, and 237).

>Collateral, and as subsequently preserved in later Stipulations for Use of Cash Collateral, that the Debtor cannot provide it with adequate protection given the provisions of 11 U.S.C. § 552(b) and the cases that interpret it, is hereby not waived and is instead expressly preserved. This legal issue will be submitted to the Court and briefed by the parties. The Debtor's use of cash collateral under this Stipulation, except as otherwise provided in this agreement, will continue unless and until the Court determines that AgStar is not adequately protected because of the application of 11 U.S.C. § 552(b). If the Court does not accept AgStar's position regarding the legal effect of 11 U.S.C. § 552(b) on the Debtor's ability to provide adequate protection, then this Stipulation shall continue according to its terms.

The issue presented is whether AgStar's security interests extend to Debtor's post-petition milk and milk proceeds.[2]

II.

Pursuant to 11 U.S.C. § 552(a), "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." However,

>[I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such

---

[2] The parties posed a second issue, *i.e.*, whether Debtor has offered sufficient adequate protection of AgStar's interest in Debtor's post-petition milk proceeds. However, because the parties elected to submit the first issue on briefs rather than proceed with the evidentiary hearing scheduled for June 4, 2010, the present record affords no basis for the Court's consideration of the sufficiency of Debtor's offer. *See Martin v. United States (In re Martin)*, 761 F.2d 472 (8th Cir. 1985).

> proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

Debtor urges the Court to adopt the reasoning of a number of courts that have concluded milk is not a "product" within the meaning of § 552(b)(1).[3] Their reasoning varies, but those courts have collectively eschewed a literal application of § 552(b)(1) to milk produced post-petition. The majority of courts that have considered the issue, however, have reached the opposite conclusion.

> [T]here is a line of decisions which hold that § 552(b) extends a creditor's lien to milk produced after the bankruptcy petition is filed. Rather than exploring the legislative history, these decisions apply § 552(b) in its literal sense. The emphasis of these cases is on the parties' security agreement and the nonbankruptcy law applicable to the facts presented.

*In re Underbakke*, 60 B.R. 705, 708 (Bankr. N.D. Iowa 1986) (cases cited therein).

Because § 552(b)(1)'s language is plain, this Court will – as it believes it must – apply § 552(b)(1) in its literal sense. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (where a statute's language is plain, the sole function of the court is to enforce it according to its terms).

---

[3] Debtor has not otherwise challenged the extent to which AgStar's security interests extend to proceeds and products under the terms of the parties' security agreements or under South Dakota or other nonbankruptcy law.

-4-

III.

In paragraph 13 of their stipulation, the parties agreed AgStar holds "valid and perfected blanket security interests in ... Debtor's personal property[,] including ... farm products, milk, and milk proceeds, as more fully described in [AgStar's financing statements]." Those financing statements, which were attached to the parties' stipulation, specifically include within the description of AgStar's collateral after-acquired property and "all products and proceeds" of its collateral.

Debtor is correct when it says neither the bankruptcy code nor the South Dakota Codified Laws define the term "products."[4] However, when a term used in a statute is undefined, courts interpreting that statute must give that term its ordinary meaning. *Hamilton v. Lanning*, ___ U.S. ___, 2010 WL 2243704, *6 (2010) (citation omitted).[5]

AgStar argues "[o]ne does not have to grow up on a farm to understand that milk is a 'product of' a cow." The Court agrees. Thus, the ordinary meaning of "product" includes milk produced by dairy cows. Debtor even admits as much – albeit

---

[4] The South Dakota Codified Laws do define "farm products" to include "[p]roducts of crops or livestock in their unmanufactured states." S.D.C.L. § 57A-9-102(34).

[5] The same rule of statutory construction applies with respect to a court's interpretation of the South Dakota Codified Laws. *See*, *e.g.*, *Hagemann ex rel. Estate of Hagemann v. NJS Engineering, Inc.*, 632 N.W.2d 840, 843 (S.D. 2001) (citations therein).

most likely unintentionally – in its motion, in which it refers to its "dairy *production* operation" (paragraph 10), its "*productive* herd" (paragraph 13), its "*production* numbers" (paragraph 14), the "dairy *production* industry" (paragraph 14), "dairy *products*" (paragraph 17), and "dairy *producers*" (paragraph 18) (emphasis added).[6]

AgStar's security interests extend to property acquired by Debtor prior to the petition date and to the proceeds – including those from the sale of milk – and products – including milk – of that property.  Consequently, pursuant to § 552(b)(1), and notwithstanding § 552(a), AgStar's security interests extend to any and all proceeds of its collateral – including those from the sale of milk – and products of its collateral – including milk – acquired by the estate on or after the petition date.

Debtor suggests the Court may, based on the equities of the case, terminate AgStar's security interests in Debtor's post-petition milk and milk proceeds.  11 U.S.C. § 552(b)(1).  Debtor did not request such relief, which may only be granted after notice and a hearing, in its motion.  Thus, the Court will not consider Debtor's suggestion at this time.

The Court will enter an appropriate order.  If the parties are unable to agree on appropriate adequate protection, either party may request the matter be set for an evidentiary hearing.

Dated: July 9, 2010.

BY THE COURT:

*[signature]*

Charles L. Nail, Jr.
Bankruptcy Judge

---

[6] Debtor was much more circumspect in its brief.

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota