UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 10-10071 |
| | ) | Chapter 11 |
| VEBLEN WEST DAIRY LLP | ) | |
| Tax ID/EIN 26-2017857 | ) | DECISION RE:  MOTION |
| | ) | TO APPOINT A TRUSTEE |
| Debtor. | ) | |

The matter before the Court is AgStar Financial Services, PCA and AgStar Financial Services, FLCA's Motion for Appointment of a Trustee.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c).  As set forth below, the motion will be granted.

I.

Veblen West Dairy LLP ("Debtor") is one of several interrelated dairy operations in South Dakota and its neighboring states.  Debtor is primarily a milking facility, with nearly 4,000 cows in production.  Debtor's most significant ties to and direct connections with the various interrelated entities were with Veblen East Dairy Limited Partnership ("Veblen East") and Prairie Ridge Management Company, LLC ("Prairie Ridge").  Veblen East purchased dry cows from Debtor and the related milking facilities, supplied freshened cows to the same facilities, and operated a calving, special needs, and hospital facility.  Under the direction of Richard Millner ("Millner"), Prairie Ridge managed Debtor, Veblen East, the other milking facilities, and certain related calf- and heifer-raising facilities.  Several of the entities were financed by AgStar Financial Services, PCA and AgStar Financial Services, FLCA ("AgStar").

None of the interrelated entities has been in existence for very long, though several are the successors-in-interest of longer-running operations.  Each operation is a distinct legal entity with separate bank accounts, but all have common, though not identical, owners.  Many of the ownership interests are held – directly or indirectly –

by Millner and members of his family. Some of the owners guaranteed the entities' respective debts.

Several of the related operations began to experience financial problems, with matters coming to a head with AgStar in late 2009 and early 2010. In the process, Veblen East became indebted to and partly owned by a foreign bank. Through a Minnesota state court proceeding, Veblen East was placed in a receivership. Debtor filed for chapter 11 bankruptcy relief in this district on April 7, 2010. On the same date, The Dairy Dozen-Milnor, LLP, a related milking facility, filed for chapter 11 bankruptcy relief in the District of North Dakota, and The Dairy Dozen-Thief River Falls, LLP, another related entity, filed for chapter 11 bankruptcy relief in the District of Minnesota.[1] Since the hearing in this matter, there have been other related bankruptcy filings.[2]

Shortly after Debtor's bankruptcy case was filed, AgStar filed a motion seeking the appointment of a chapter 11 trustee (doc. 64). An evidentiary hearing was held over the course of two days. The evidence presented by AgStar focused on Debtor's continuing environmental issues and numerous substantial transfers of assets and liabilities between and among Debtor and the several related entities. The evidence presented by Debtor focused on the current operation of the facility. Debtor also tried to explain some of, but not nearly all, the pre-petition transfers that AgStar identified as problematic. After the close of testimony, the parties filed written closing arguments, and the matter was taken under advisement.

---

[1] *In re The Dairy Dozen-Milnor, LLP*, Bankr. No. 10-30377 (Bankr. D.N.D.), is still pending under chapter 11. A plan of reorganization has not been confirmed. *In re The Dairy Dozen-Thief River Falls, LLP*, Bankr. No. 10-60438 (Bankr. D. Minn.), was converted to chapter 7 on June 3, 2010.

[2] Veblen East and The Dairy Dozen-Veblen, LLP, another related entity, both filed for chapter 11 bankruptcy relief in this district on July 2, 2010.

II.

Section 1104(a) of the Bankruptcy Code provides:

At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court **shall** order the appointment of a trustee -

> (1) **for cause**, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
>
> (2) **if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate**, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor[.]

11 U.S.C. § 1104(a)(2010) (emphasis added).[3]

Case law from this Circuit interpreting and applying § 1104(a) is limited. However, the parties appear to agree – or at least do not appear to disagree – on several principles. First, the appointment of a trustee in a chapter 11 case is an extraordinary remedy. *Adams v. Marwil (In re Bayou Group, LLC)*, 564 F.3d 541, 546 (2nd Cir. 2009); *In re Ag Service Centers, L.C.*, 239 B.R. 545, 550 (Bankr. W.D. Mo.

---

[3] AgStar's brief did not reference subpart (3), which was added by BAPCPA. It provides the court shall order the appointment of a trustee:

> (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

Case law is limited, but it appears, when subsection (a)(3) is read in conjunction with § 1112, the application of § 1104(a)(3) is limited to situations where the court is presented with a motion and cause to dismiss or convert the case, but using the authority given by § 1104(a)(3), the court appoints a chapter 11 trustee instead. One court has viewed it as incorporating "cause" under § 1112 for conversion or dismissal as cause for appointment of a trustee. *In re Plaza de Retiro, Inc.*, 417 B.R. 632, 642 and 642 n.9 (Bankr. D.N.M. 2009).

-4-

1999). Second, there is a strong presumption in favor of allowing a chapter 11 debtor-in-possession to remain in possession. *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3rd Cir. 2003); *Ag Service Centers, L.C.*, 239 B.R. at 550. Third, the movant bears the burden of proof. *Bayou Group, LLC*, 564 F.3rd at 546-47; *Ag Service Centers, L.C.*, 239 B.R. at 550.

The parties disagree, however, on the extent of the movant's burden of proof. Two circuit courts of appeal have concluded the movant must meet its burden with clear and convincing evidence. *Bayou Group, LLC*, 564 F.3d at 546-47; *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 385 F.3d 313 (3rd Cir. 2004). Most other courts have followed suit. *See In re Sundale, Ltd.*, 400 B.R. 890, 899-900 and 900 n.8 (Bankr. S.D. Fla. 2009) (cites therein). However, at least one court has found the appropriate standard to be a preponderance of the evidence. *Tradex Corp. v. Morse*, 339 B.R. 823, 829 (D. Mass. 2006).

The Court has the discretionary authority to determine whether cause exists for the appointment of a trustee under § 1104(a)(1). *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3rd Cir. 1989). Considerations include the materiality of any misconduct, the debtor-in-possession's evenhandedness or lack thereof in dealings with insiders and affiliated entities in relation to other creditors, the existence of pre-petition voidable preferences or fraudulent conveyances, whether any conflicts of interest on the part of the debtor-in-possession are interfering with its ability to fulfill its fiduciary duties, and whether there has been self-dealing or squandering of estate assets. *In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005) (citing *Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239, 242 (4th Cir. 1987); *Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.)*, 838 F.2d 1133 (10th Cir. 1988); *Sharon Steel*, 871 F.2d at 1228; *In re Marvel Entertainment Group, Inc.*, 140

F.3d 463, 471 (3${}^{rd}$ Cir. 1998); *Cajun Electric Power Coop. v. Central Louisiana Electric Coop. (In re Cajun Electric Power Coop.)*, 74 F.3d 599, 600 (5${}^{th}$ Cir. 1996); and *Lowenschuss v. Selnick (In re Lowenschuss)*, 171 F.3d 673 (9${}^{th}$ Cir. 1999)). If cause is found, the appointment of a trustee is mandatory. 11 U.S.C. § 1104(a)(1); *Sims v. Sims (In re Sims),* 226 B.R. 284 (table *4) (B.A.P. 10${}^{th}$ Cir. 1997) (citing *Oklahoma Refining Co.,* 838 F.2d at 1136).

III.

Both Debtor and AgStar offered substantial testimony and several exhibits regarding environmental issues Debtor faces, mostly having to do with its lagoons and manure handling system. The Court concludes, though the problems were serious and to some extent remain ongoing, Debtor's efforts to resolve these issues were both appropriate and reasonable. This conclusion is supported by the testimony of Jeanne Goodman, a geologist with South Dakota's Department of Environment and Natural Resources' water quality program. Accordingly, the Court finds the environmental issues provide insufficient cause for the appointment of a chapter 11 trustee.[4]

AgStar also did not establish incompetence or gross mismanagement in Debtor's

---

[4] The Court is mindful that in its July 8, 2010 motion seeking confirmation the automatic stay is not applicable to its waste water regulatory powers (doc. 261), South Dakota's Department of Environment and Natural Resources alleged:

> Debtor has not taken the actions necessary to reduce the level of wastewater in its holding ponds or to ensure that it will reduce those levels within the time necessary in order to mitigate the possibility of a discharge this coming Fall or Winter. Rather, Debtor has increased the number of cattle being milked and water used, resulting in increased stress on the holding ponds and their storage capacity. . . . A failure or overflow of Debtor's wastewater holding ponds would result in an immediate and serious threat to public health.

This is certainly troubling. However, the allegations were made after the hearing on the instant motion. The Department and Debtor have resolved the motion, but not the environmental problems, by stipulation (doc. 277).

day-to-day operations that would constitute cause for the appointment of a chapter 11 trustee. Michael Stavick, Debtor's operations manager, testified Debtor's facilities, equipment, and herd are in good condition and are being maintained, and Debtor's employees are competent and are willing to work for him, despite the bankruptcy filing. Mr. Stavick's testimony was not controverted.

As to the management of Debtor's business affairs and its relationship and transactions with Veblen East, Prairie Ridge, and the other related entities, primarily *before* the case was filed, the record tips the scales in favor of the appointment of a chapter 11 trustee. AgStar, through Certified Public Accountant Glen Steiner, identified numerous pre-petition transactions, mostly in 2010, between and among Debtor and the related entities, that involved substantial assets and liabilities and significant changes in equity positions. For example, and perhaps most notably, Steiner detailed how, in late February and early March 2010, $395,000.00 of a $550,468.24 milk proceeds check Debtor received was used to pay down a debt owed by another related entity, Vantage Cattle Company, LLP. Debtor was unable to satisfactorily explain or justify why these milk proceeds were used for anything other than Debtor's own operating expenses.

Steiner's remaining testimony was also largely undisputed. Debtor acknowledged some of the transfers of assets and liabilities and the changes in equity positions Steiner had questioned, and it did little to ease any of the Court's concern that Debtor's and its management team's pre-petition actions were not evenhanded and were primarily intended to benefit insiders and the several affiliated entities, rather than Debtor's creditors.[5]  Significantly, Debtor chose not to offer explanatory

---

[5] Debtor's post-petition selection of Michael Wyum to replace Millner as its managing partner did nothing to alleviate the Court's concern. Millner continues to be actively involved with Prairie Ridge, and Prairie Ridge continues to be actively involved

-7-

testimony from Shan Betzold, Prairie Ridge's controller, the individual Millner testified made the decision whom to pay and whom not to pay and who would therefore be most likely to possess firsthand knowledge of the facts needed to explain Debtor's seemingly aberrant use of its milk proceeds.  Millner's own attempts to explain some of the transactions were fruitless, and his testimony raised more red flags than it lowered.

    Joel Gratz, the Certified Public Accountant whose testimony was offered by Debtor, acknowledged his accounting firm had done a financial review in 2008 but had not done an audit in 2008 or thereafter.  He also stated his accounting firm had helped Prairie Ridge set up a system for reconciling accounts among the several interrelated entities, but he admitted he had not regularly helped reconcile those accounts since June 2009 and had not performed any formal year-end work for Debtor in 2009.  As a result, he did not have sufficient knowledge of or involvement with the transactions that were called into doubt, many of which were in 2010, to offer meaningful insight.  Further, Gratz acknowledged he had not formally audited any of the subject transactions, so he could only give an opinion they could have been in the ordinary course of business, not that they actually were in the ordinary course of business.

    The record offers insufficient evidence of post-petition dealings for the Court to determine whether Debtor's and its management team's conflicts of interest are interfering with Debtor's ability to fulfill its chapter 11 fiduciary duties or whether there has been any post-petition squandering of estate assets.  However, the record is abundant and alarmingly clear that an independent entity needs to assess the case for possible voidable pre-petition preferences and fraudulent or constructively

---

with Debtor.  Wyum gave the Court no reason to believe he would act independently of Millner.

-8-

fraudulent conveyances.[6]

The question remains, however, how far the scales must tip in favor of the appointment of a chapter 11 trustee. As noted above, the courts are not unanimous regarding the applicable burden of proof. While several courts have relied on the ruling of the Court of Appeals for the Third Circuit in *G-I Holdings, Inc.*, 385 F.3d 313, to require clear and convincing evidence to support the appointment of a chapter 11 trustee, this Court must acknowledge the Supreme Court's guidance in *Grogan v. Garner*, 498 U.S. 279 (1991).

> Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interests or rights are at stake." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-390, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983); *see also Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). We have previously held that a debtor has no constitutional or "fundamental" right to a discharge in bankruptcy. *See United States v. Kras*, 409 U.S. 434, 445-446, 93 S.Ct. 631, 637-638, 34 L.Ed.2d 626 (1973). We also do not believe that, in the context of provisions designed to exempt certain claims from discharge, a debtor has an interest in discharge sufficient to require a heightened standard of proof.

*Id*. at 286. A chapter 11 debtor's desire to remain in possession of the property of the bankruptcy estate and in control of its reorganization is certainly an important interest, but that interest cannot reasonably be said to be any more important than a chapter 7 debtor's interest in receiving a discharge of all his debts. The Court is thus persuaded a party seeking the appointment of a chapter 11 trustee bears the burden of persuasion by the preponderance of the evidence, not by clear and convincing evidence.

---

[6] That independent entity could also review Debtor's transactions with its former attorneys, who have not filed an application for compensation or accounted for the pre-petition retainer they received in connection with the case, and Debtor's transactions with Prairie Ridge, which has not been employed by the estate, despite clear evidence it is rendering professional services to Debtor.

In this case, however, the evidence offered by AgStar is in fact both clear and convincing. Consequently, regardless of which standard is applied, AgStar has met its burden of proof and has established cause for the appointment of a chapter 11 trustee. The Court must therefore grant AgStar's motion. 11 U.S.C. § 1104(a)(1). An appropriate order will be entered.[7]

Dated: July 16, 2010.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

**On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.**

**Frederick M. Entwistle**
**Clerk, U.S. Bankruptcy Court**
**District of South Dakota**

**NOTICE OF ENTRY**
**Under Fed.R.Bankr.P. 9022(a)**

**This order/judgment was entered on the date shown above.**

**Frederick M. Entwistle**
**Clerk, U.S. Bankruptcy Court**
**District of South Dakota**

---

[7] Because the appointment of a trustee is mandatory under § 1104(a)(1) if cause is found, the Court does not reach the question under 11 U.S.C. § 1104(a)(2) of whether the appointment of a trustee is in the best interests of creditors, any equity security holders, and other interests.